### BROSNAN v. BROSNAN et al.

(Court of Appeals of District of Columbia. Submitted February 7, 1923. Decided May 7, 1923.)

No. 3907.

1. Courts ⬦200¼—Probate court cannot give heirs relief as actual or potential stockholders of a corporation.

The Supreme Court of the District, sitting as a court of probate in proceedings to remove an administrator, cannot give to the heirs of the deceased any relief as actual or potential stockholders in a corporation controlled by the administrator, by virtue of his stock of the estate, but such relief can only be obtained in a court having general jurisdiction and in a suit in which the corporation is a party.

2. Executors and administrators ⬦35(16)—Controversy as to concealed assets does not authorize removal of administrator without hearing.

Though Code, § 124, authorizes the removal of an administrator if he be charged with concealing assets, and the court shall decree in favor of the allegations of the petition in whole or in part, and he fails to comply with the requirement for a due return, the mere fact that a controversy between the administrator and the heirs as to the concealment of the assets exists does not authorize the removal of the administrator, without a hearing of the charges of concealment made by the petition.

3. Executors and administrators ⬦35(13)—Parties designated by statute as having right to appointment cannot be removed without notice and trial.

Code, §§ 276–288, regulating the parties entitled to be appointed as administrator, implies a right to appointment on the part of the described parties, in the absence of disqualification, and, when such parties are regularly appointed and qualified, they cannot be removed without notice and trial.

**4. Executors and administrators** ⊚⟹35(15)—**Petition for removal of administrator is pleading only, not evidence.**

On the trial of charges of concealing assets made against the administrator, the petition of the heirs making the charges is to be regarded as a pleading only, and not as evidence.

Appeal from the Supreme Court of the District of Columbia.

Petition by Nellie R. Brosnan and others against John Brosnan, Jr., for the removal of the latter as administrator of the estate of John Brosnan, Sr., deceased. From an order of removal, the administrator appeals. Reversed, and cause remanded for trial.

Wilton J. Lambert, R. H. Yeatman, and George C. Gertman, all of Washington, D. C., for appellant.

W. Gwynn Gardiner, of Washington, D. C., for appellees.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and MARTIN, Judge, of the United States Court of Customs Appeals.

MARTIN, Acting Associate Justice. This is an appeal from a decision of the Supreme Court of the District of Columbia, holding a probate court, whereby an administrator was removed upon a complaint filed by the heirs.

On September 21, 1917, the appellant, John Brosnan, Jr., was regularly appointed and qualified as the sole administrator of the estate of John Brosnan, Sr., deceased. In his petition for appointment he stated that the decedent had died intestate, leaving six children surviving him as his only heirs at law, to wit, one son, the petitioner, and five daughters; that the estate consisted in part of 496 shares of the capital stock of the Provident Relief Association, which were deposited with a local bank, together with an equal number of like shares belonging to the petitioner, as collateral for a debt amounting to $32,500, owing to the bank as a joint obligation of the petitioner and the decedent. The five daughters of the decedent filed a written consent to the appointment of the petitioner as administrator.

In March, 1918, an inventory and appraisement of the estate was returned by the administrator, wherein the shares of stock in the Provident Relief Association were returned as follows, to wit: Certificate No. 61, for 155 shares; certificate No. 69, for 8 shares; certificate No. 64, for 335 shares—being 498 shares in all, and were appraised at $15,936. In October, 1919, the administrator filed his first account, charging himself with receipts of $4,814.13, and crediting himself with payments of $6,238.01, leaving the estate overdrawn in account with him in the sum of $1,423.88. The following note appeared in the account with reference to the shares of stock above mentioned, to wit:

"Note.—This stock, consisting of 498 shares of the capital stock of the Provident Relief Association, of Washington, D. C., was at the death of John Brosnan, and still is deposited with the Munsey Trust Company as part collateral to a joint note signed and endorsed by the decedent and John Brosnan, Jr., for $35,000, one-half of which amount, namely, $17,500, was due from decedent to the Munsey Trust Company and is subject to con-

tribution in the sum of at least one-half of the amount of the note for $35,-000."

No exception was taken by any person either to the inventory and appraisement or to the foregoing account, and the latter was regularly approved and passed by the court. In October, 1920, an affidavit in lieu of a second account was filed by the administrator, stating that no money or other assets had been received or disbursed by him since the date of his first account. No exception was filed thereto, and the affidavit was approved and passed by the court in lieu of a second account. In October, 1921, the administrator filed a similar affidavit in lieu of a third account, and thereupon the heirs filed exceptions, objecting to the acceptance of the affidavit. Apparently these exceptions were never submitted to the court, for afterwards, to wit, on April 21, 1922, the heirs filed a petition for the removal of the administrator and the appointment of his successor. As grounds for such removal they alleged that the decedent at the time of his death was the owner of 995 shares of the total capital stock of 1,000 shares of the Provident Relief Association; that the administrator nevertheless had returned only 498 shares thereof in the inventory of the estate, claiming himself to be the owner of the residue. They stated furthermore, upon information, that the value of the shares was between $150,000 and $300,000, and averred that the administrator had misused his control over the estate's stock, by having himself elected president of the company at an excessive salary, and by other similar breaches of his trust in relation both to the company and the estate. They alleged that they had been induced to give their written consent to his appointment as administrator because of their fear that otherwise he would inflict great bodily harm upon them. They charged that he was intending and attempting to defraud them of their interest in the estate, and prayed for his removal and the appointment of a disinterested administrator in his stead.

The administrator filed an answer under oath, which in effect denied the accusations against him. He averred specifically that he was the owner in his own right of 497 shares of said capital stock at the time of decedent's death, and that the decedent owned 498 shares of similar stock, and furthermore that both his own shares and those of decedent had been deposited with the Munsey Trust Company in decedent's lifetime as security for a joint obligation of both of them to that bank, that at the time of decedent's death the sum of $35,000 was due and owing thereon, and that that debt remains wholly unpaid, with the stock still held by the bank as security therefor.

[1] The two pleadings just referred to set out in great detail the conflicting claims of the parties with reference to the affairs of the Provident Relief Association aforesaid. That company, however, is not a party in this case, and the court has no jurisdiction over it, nor can the court in this proceeding afford any relief to the parties as actual or potential stockholders therein. Such relief must be sought in a court having general equity jurisdiction. Cook v. Speare, 13 App. D. C. 446; Richardson v. Daggett, 24 App. D. C. 440. The present issue,

therefore, after all is whether the administrator has fraudulently concealed or converted any of the assets of the estate. That issue came on to be heard by the court, whereupon, without the introduction of any testimony whatever upon either side, the court entered a finding, order, and decree reading in part as follows, to wit:

"In view of the controversy which has arisen between the administrator and the other next of kin as to the ownership of property of considerable value, without, of course, passing upon the merits of the controversy, I think that it is no longer proper for the present administrator to act as such. It is by the court this 9th day of September, A. D. 1922, ordered, adjudged, and decreed that John Brosnan, Jr., be and he hereby is removed as administrator of the estate of John Brosnan, deceased, in administration No. 24,027."

The administrator appealed from the foregoing decision upon the ground, among others, that the court erred in removing him without requiring the petitioners to produce testimony in support of their petition, and without granting him a hearing and affording him an opportunity to introduce testimony in his defense.

[2] We think that this action of the court was erroneous. The allegations of the petition were sufficient, if sustained, to justify the removal of the administrator, for section 124 of the District Code expressly provides that if an administrator be charged by petition with concealing assets in his hands, and if the court shall finally adjudge and decree in favor of the allegations of the petition in whole or in part, it shall require a due return of the omitted assets, and remove the administrator in case he fails to comply therewith. This language plainly implies, however, that the court shall hear testimony before it may "finally adjudge and decree" upon the merits of the controversy. In the instant case the court heard no testimony, but acted upon the assumption that the mere existence of the controversy was sufficient to justify the removal of the administrator. In effect, therefore, the administrator was removed, not because he had in fact concealed assets of the estate, but because the other heirs charged him with doing so. This action under the circumstances was arbitrary, and if followed as a precedent it would establish a very uncertain tenure of office for administrators. It is, of course, well known that disputes frequently arise in practice over the inventories and accounts of administrators, but the mere existence of such a dispute cannot serve as a ground for removing an administrator without a trial.

[3, 4] This conclusion is fully sustained by the authorities. It is provided by the District Code (sections 276, 281) that, when an intestate leaves no relict, administration shall be entrusted to his child or children, unless they be disqualified, and that males shall be preferred to females in equal degree. It has also been said that the law prefers a sole rather than a joint administration. Williams v. Williams, 24 App. D. C. 214, 217. These statutory regulations imply a right to appointment upon the part of the described parties, in the absence of disqualification, and consequently after they are once regularly appointed and qualified they cannot be removed without notice and a trial. In the present case the administrator, if guilty of the charges

made against him, should undoubtedly be removed; but he is entitled to his day in court—in other words, to a trial upon the evidence—and at such a trial the petition is to be regarded as a pleading only, and not as evidence. Wilson v. Hoss, 22 Tenn. (3 Humph.) 142; Gregg v. Wilson, 24 Ind. 227; In re Bagnola's Estate, 178 Iowa, 757, 154 N. W. 461, 160 N. W. 228. In re Estate of Patten, 18 D. C. 400, the court said:

"The position of an executor is a valuable office, from which he should not be deposed without the opportunity of defense. * * * Indeed, there is nothing more firmly imbedded in our jurisprudence, constitution and laws, than the principle that a man is not to be condemned without a hearing, nor to be deprived of his property or rights without having been first afforded an opportunity of defending himself in the courts."

In Williams v. Williams, 24 App. D. C. 214, 217, Alvey, C. J., speaking for this court, said:

"The right of administration is a valuable right, and those upon whom that right has been conferred by statute should not be deprived of it, except as the statute has provided."

In Guthrie v. Welch, 24 App. D. C. 562, this court, speaking by Morris, J., said:

"Similarly, in the matter of the removal of an administrator once appointed there is a limitation upon the power of the probate court; for the order of administration is regulated by the statute, and, unless there is good cause to the contrary, which, however, is in the sound judicial discretion of the probate court itself, that court is bound to appoint the different persons entitled in the order in which they are designated in the statute, and, being compelled to appoint in that order, it is not, of course, at liberty to nullify the law by arbitrary removal after appointment."

In Levering v. Levering, 64 Md. 399, 2 Atl. 1, the court said:

"It has been held in some of the states that the power of removal is inherent in the courts of probate, and must necessarily exist in order to prevent a failure of justice. * * * In Maryland, however, an executor or administrator can only be removed for legal and specific causes, and after citation and an opportunity to be heard in opposition to the motion."

In 18 Cyc. 157, it is said:

"On an application for the revocation of letters, the facts necessary to induce the court to act should be made to appear by proof, and a mere statement of such facts in the petition is not to be regarded as evidence thereof."

We therefore reverse, with costs, the decision herein appealed from, and remand the case for trial, or such other proceedings as may be consistent herewith.